



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

PETER LAMONTE, individually and
on behalf of all others similarly
situated,

                  Plaintiff,

      v.

BEAVEX, INC., MARK
TUCHMANN, and DOES I-X,

                 Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

COMPLAINT -- CLASS ACTION



Civil Action No. 1:09-CV-3158

JURY DEMAND

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiff Peter LaMonte ("Plaintiff"), individually and on behalf of all others

similarly situated, by and through his undersigned counsel, brings this Class and

Collective Action Complaint (the "Complaint") against Defendants BeavEx, Inc.

("BeavEx"), Mark Tuchmann and DOES I-X (collectively, "Defendants") on

behalf of all persons who entered into an Independent Contractor Services

Agreement with BeavEx and who drove or who currently drive a vehicle on a full-

time basis as a courier (meaning exclusive of time off for commonly excused

employment absences) at any time during the relevant statutory period applicable

and belief, except as to the allegations that pertain to Plaintiff and his counsel, which are based upon personal knowledge, as follows:

## NATURE OF ACTION

1.      BeavEx is one of the largest privately held courier companies in the United States and provides same day scheduled courier delivery services primarily for the banking and healthcare industries.  BeavEx delivers more than 40 percent of the nation's checks every day.  According to its website, BeavEx transports over $60 billion in checks and deposits every day on behalf of the nation's largest financial institutions, and the thousands of drivers it employs make over 15,000 daily deliveries across the country.

2.      BeavEx's ability to operate and its success as a company depend upon the services provided by its drivers.

3.      This proceeding concerns BeavEx's illegal scheme to misclassify its drivers as independent contractors in order to avoid the obligations and costs imposed on employers by federal and state law.

4.      BeavEx's own website touts itself as benefitting from classifying its drivers as independent contractors, stating that "[a]s a result of its broker-operator business model, BeavEx's labor costs and capital expenditures are significantly less than same-day couriers utilizing company-employed drivers; those cost savings are

2

passed on directly to our customers."

5.      Despite the written classification of its drivers as independent contracts, BeavEx retains the right to control and actually does control all of the principal functions of its drivers' activities.

6.      BeavEx's drivers are, in economic reality, employees. Plaintiff and the Class are required to wear BeavEx uniforms, display BeavEx's logo, follow the strict policies and procedures of BeavEx, work the schedule arranged by BeavEx, and purchase equipment required by BeavEx. Plaintiff and the Class are subject to discipline or termination if they violate any of BeavEx's policies, procedures or rules.

## RELEVANT BACKGROUND

7.      By way of background, unfortunately, some employers across the United States have found that worker protection laws and tax laws can be avoided by entering into a "contract" relationship with their workers, even where the worker is providing personal services that are completely integrated into the employer's business and in fact constitute the "core" business of the employer. This often occurs when employers force their employees to sign a contract stating that they are an "independent contractor," and then make their employees obtain their own business license or insurance coverage. In some industries, firms have

3

even set up third party contracting services in an attempt to provide another layer of purported protection for what is in fact a complete sham.

8.     By these simple arrangements, employers attempt to avoid paying unemployment insurance, workers' compensation, and social security taxes, and to escape the cost of withholding income taxes, since employers are not obligated to make these payments on behalf of true independent contractors. For example, in 1994, it was estimated that proper classification of employees would increase tax receipts by $34.7 billion over the period 1996-2004. *See* Projection of the Loss in Federal Tax Revenues Due to Misclassification of Workers, Coopers & Lybrand (1994) (now PriceWaterhouse Coopers).

9.     Workers classified as independent contractors also lack coverage under labor protective laws such as minimum wage, overtime, discrimination, health and safety, job-protected family and medical leave, and freedom of association laws.     *See* U.S. General Accountability Office, Employment Arrangements: Improved Outreach Could Help Ensure Proper Worker Classification, GAO-06-656 (July 2006), at 7, 25.

10.     Studies have shown that by falsely labeling employees as "independent contractors," businesses stand to gain upwards of thirty percent

4

(30%) of payroll and related taxes paid for "employees."[1]  In addition, businesses

that employ a misclassification scheme can underbid their competitors, especially

in labor intensive sectors such as delivery services.  This creates an unfair and

uncompetitive marketplace.  The GAO concluded in its July 2006 report that:

> employers have economic incentives to misclassify employees as
> independent contractors because employers are not obligated to make
> certain financial expenditures for independent contractors that they
> make for employees, such as paying certain taxes (Social Security,
> Medicare, and unemployment taxes), providing workers'
> compensation insurance, paying minimum wage and overtime wages,
> or including independent contractors in employee benefit plans.

Employment Arrangements: Improved Outreach Could Help Ensure Proper

Worker Classification, GAO-06-656 (July 2006), at 25 ("GAO 06-656").

11.     By definition, an "independent contractor" is a person who is in

business for him or herself.  True independent contractors have a specialized skill;

independently invest capital in their business; and perform a service that is not part

---

[1]     Several states have recently collected data on the costs of misclassifying
employees as independent contractors. *See, e.g.*, Fiscal Policy Institute, "New
York State Workers Compensation: How Big is the Shortfall?" (January 2007)
(New York); Michael Kelsay, James Sturgeon, Kelly Pinikham, "The Economic
Costs of Employee Misclassification in the State of Illinois" (Dept. of Economics:
University of Missouri-Kansas City: December 2006) (Illinois); Peter Fisher, et al.,
"Nonstandard Jobs, Substandard Benefits," Iowa Policy Project (July 2005)
(Iowa); State of Maine, "Annual Report on the Status of the Maine Workers'
Compensation System," Submitted to the Legislature, February 2005) (Maine);
Francois Carre, J.W. McCormack, "The Social and Economic Cost of Employee
Misclassification in Construction (Labor and Worklife Program, Harvard Law
School and Harvard School of Public Health: December 2004) (Massachusetts).

of the receiving firm's overall business. *See* GAO 06-656, at 43. Examples are a plumber called in by an office manager to fix a leaky sink in the corporate bathroom, or a computer technician on a retainer with a shipping and receiving company to trouble-shoot software glitches. As the U.S. Department of Labor's Commission on the Future of Worker-Management Relations concluded, "[t]he law should confer independent contractor status only on those for whom it is appropriate – entrepreneurs who bear the risk of loss, serve multiple clients, hold themselves out to the public as an independent business, and so forth. The law should not provide incentives for misclassification of employees as independent contractors, which costs federal and state treasuries large sums in uncollected social security, unemployment, personal income, and other taxes." U.S. Department of Labor, Commission on the Future of Worker-Management Relations (1995).

12. The illegal practice of misclassifying employees as independent contractors is pervasive. In 2000, the U.S. Department of Labor commissioned a study and found that up to 30% of firms misclassify their employees as independent contractors. *See* Lalith de Silva et al., *Independent Contractors: Prevalence and Implications for Unemployment Insurance Programs* i-iv, prepared

for U.S. Department of Labor, Employment and Training Division by Planmatics, Inc.

13.    This case is a prime example of the blatant and illegal misclassification of workers as independent contractors pursuant to agreements that mock the tests that have been designed to determine employee status. During the time period relevant to this Complaint, Defendants have maintained a uniform policy and practice of misclassifying BeavEx's drivers as independent contractors instead of employees.

14.    As a result of Defendants' illegal scheme to misclassify BeavEx's drivers, Plaintiff and the Class are entitled to, *inter alia*: a) a declaration that they are employees; b) rescission of their contract with BeavEx which is illegal and violates public policy and is therefore void; and c) damages based on Defendants' violations of federal and state law as set forth herein.

15.    Plaintiff and the Class seek injunctive and declaratory relief and monetary damages to redress the deprivation of rights secured to them under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"); the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(6); and the laws of the State of Georgia (which Defendants assert uniformly apply to its illegal contracts).

16.     Defendants have also committed and/or conspired to commit wire and mail fraud by knowingly and deliberately misclassifying Plaintiff and the Class as independent contractors to avoid Defendants' obligations to pay wages, overtime pay, workers' compensation premiums, payroll taxes, and other employment benefits that Plaintiff and the Class would receive as employees.   Defendants' illegal scheme to misclassify Plaintiff and the Class constitutes a violation of RICO, 18 U.S.C. § 1962(c), because, for at least four years prior to the filing of this Complaint, Defendants BeavEx, Mark Tuchmann and DOES I-X agreed to and did conduct and participate in the conduct of BeavEx and third party Contractor Management Services' ("CMS's") affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff and the Class. Predicate criminal violations include wire fraud and mail fraud, and conspiracy to commit these acts.  Plaintiff asserts that Defendants BeavEx, Mark Tuchmann and unnamed co-conspirators DOES I-X as well as CMS agreed and conspired to misclassify BeavEx's drivers as independent contractors instead of employees, in violation of 18 U.S.C. § 1962(d).

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 because they raise a question of federal law.  This Court also has

subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b) (for

Plaintiff's FLSA claim); 18 U.S.C. § 1964 (for Plaintiff's RICO claim); 28 U.S.C.

§ 1337 (this action arising under Acts of Congress regulating commerce); and 28

U.S.C. §§ 2201 and 2002 (Plaintiff's claim for declaratory relief).

18.     This Court has supplemental jurisdiction over Plaintiff's Georgia

common law claims pursuant to 28 U.S.C. § 1367.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c)

and 18 U.S.C. § 1965.  A substantial part of the events giving rise to Plaintiff's

claims occurred within this judicial district.  Defendant BeavEx resides in this

judicial district and is subject to personal jurisdiction here.

## PARTIES

20.     Plaintiff Peter LaMonte resides in Connecticut and has worked for

Defendant BeavEx as a driver from December 7, 2006 through the present

originally at the Company's North Haven, Connecticut location and subsequently

at its Cromwell, Connecticut location.  As a term and condition of his employment,

BeavEx required Mr. LaMonte to sign a Membership Application and Agreement

with Contractor Management Services (the "CMS Agreement") and an

Independent Contractor Services Addendum with BeavEx (the "BeavEx

Agreement").  Despite these agreements, BeavEx improperly, wrongfully and

illegally classified Mr. LaMonte as an independent contractor, when the economic reality of his position is that of an employee, and BeavEx retains the right to control, and, in fact, actually does control, his work. Mr. LaMonte routinely works in excess of 40 hours per week, but, as a result of his misclassification, BeavEx does not pay him overtime compensation as required by federal wage laws. BeavEx has also improperly deducted various business-related costs and expenses from Mr. LaMonte's paychecks.

21.   Pursuant to 29 U.S.C. § 216(b), Plaintiff LaMonte has consented in writing to being a Plaintiff in this action. A copy of Mr. LaMonte's opt-in consent form is attached hereto as Exhibit 1.

22.   Defendant BeavEx, Inc. ("BeavEx") is a Connecticut corporation, with its corporate headquarters located at 3715 Northside Parkway, North Creek Building 200, Suite 300, Atlanta, Georgia 30327. BeavEx is a courier company operating in at least 42 states. At all times relevant to this Complaint, BeavEx has been an enterprise engaged in interstate commerce within the meaning of the FLSA and RICO, and the employer of Plaintiff within the meaning of the federal and state laws which form the basis for this Complaint.

23.   Defendant Mark Tuchmann ("Mr. Tuchmann") is the Founder and CEO of BeavEx, and actively manages BeavEx and its affairs.

10

24.    Upon information and belief, Defendants DOES I-X are unnamed co-conspirators, employed by or in control of BeavEx and/or Contractor Management Services, an Arizona corporation, with its corporate headquarters located at 9197 West Thunderbird Road, Peoria, Arizona 85381.

## FACTUAL ALLEGATIONS

### The Contracts

25.    As a condition of employment, BeavEx requires its drivers to sign lengthy form contracts and execute statements labeling them as "independent contractors."   These contracts are designed to conceal the true nature of the relationship between BeavEx and its drivers – that of employer and employee.

26.    BeavEx uses high-pressure sales tactics to induce its workers to sign these contracts on the spot at recruiting sessions.

27.    Specifically, in order to obtain his employment, BeavEx required Plaintiff to sign:   a) a "Membership Application and Agreement" (the "CMS Agreement") with a third party, Contractor Management Services ("CMS"); and b) an "Independent Contractor Services Addendum" (the "BeavEx Agreement") with BeavEx (together the CMS Agreement and BeavEx Agreement are referred to hereafter as the "Contracts").

11

28.     The BeavEx Agreement contains a provision stating that it is "drawn in accordance with the statutes and laws of the State of Georgia and in the event of any disagreement or litigation, the laws of this state shall apply and suit must be brought in this state."   Therefore, according to BeavEx, Georgia law applies uniformly to Plaintiff and all Class members who have signed the BeavEx Agreement. The BeavEx Agreement, as well as BeavEx's policies and practices at issue, all originated in Georgia.

29.     CMS's website homepage (http://www.ictherightway.com) features a picture of a driver/courier and states that it is "the leading full-service consulting firm for companies utilizing Independent Contractors," and that it "specializes in the transportation industry, providing compliance, settlement processing and benefit solutions that deliver measurable advantages to both company owners and Independent Contractors."

30.     CMS's website, under the page marked "About Us," states:

> ***CMS provides an environment of secure protection to shield your company from the risks associated with independent contracting.*** Getting it "almost right" could cost you thousands of dollars. The only way to handle Independent Contractors is "The Right Way".  CMS is the only partner that goes the extra mile to ensure that your business ***will reap the benefits of contracting without headaches and unnecessary costs.***

31.     Upon information and belief, CMS was formed and designed for the purpose of conspiring with Defendants and other courier companies to create an illegal scheme to permit those companies to misclassify their drivers as independent contractors in order to decrease company costs and deprive workers of their rights and benefits as employees, as well as to defraud federal and state governments of millions of dollars in unpaid taxes that companies following the law are required, and do, pay.

32.     Plaintiff was forced to sign the CMS Agreement as a term and condition of his employment with BeavEx.

33.     The CMS Agreement and BeavEx Agreement are contracts of adhesion.

34.     The Contracts are written in highly technical and confusing language, with misleading section headings and provisions regarding waivers of important rights buried within the agreements.

35.     The Contracts purport to create the legal fiction that BeavEx's drivers are independent contractors.

36.     The Contracts are standard form contracts, imposed on Plaintiff and the Class on a take-it-or-leave-it basis at the outset of their employment.

13

37.     Plaintiff and the Class have no bargaining power or opportunity to negotiate the terms of the Contracts.

38.     The Contracts flaunt federal and state law by including language that Defendants and CMS conspired to create, that falsely labels BeavEx drivers as independent contractors.

### BeavEx Retains the Right to Control The Work Performed

### By Plaintiff and the Class

39.     Despite using the label of "independent contractor," the terms of the Beavex Agreement and other documents disseminated by BeavEx grant BeavEx the absolute right to control and direct its drivers, not only as to the results to be accomplished by the work, *but also as to the details and means by which that result is accomplished, including the time, method and manner of performance.* The BeavEx Agreement and other relevant documents all emanate from the Company's corporate headquarters in Georgia.

40.     The BeavEx Agreement imposes a number of rules and policies, which are in fact, terms and conditions of employment between BeavEx and its drivers.

41.     For example, despite stating that the drivers are "independent contractors" and that BeavEx has no authority to "supervise, control, direct or

oversee the performance of Contractor's services," the BeavEx Agreement explicitly permits BeavEx to supervise, control, direct and oversee the drivers' performance by permitting BeavEx the right to discipline or terminate the drivers at will, as would an employer, based on the commission of a "major breach" or two "minor breaches."

42.     The BeavEx Agreement is structured to replicate the employer and employee relationship under the guise of an independent contractor relationship.

43.     Plaintiff and the Class are also subject to rules or policies of BeavEx that are not set forth in the Contracts, and, at Defendants' whim, may be adopted in the future at any time.

44.     In fact, Defendants routinely impose new rules and policies that govern BeavEx's employment relationship with Plaintiff and the Class, including, just for example:

> a.     Penalties for failure to wear a uniform or badge;
>
> b.     Penalties for failure to provide manifests with delivery bags;
>
> c.     Penalties for failure to scan a location;
>
> d.     Unilateral reduction of BeavEx's rate of pay to Plaintiff and the Class; and
>
> e.     Vendor fuel surcharges.

15

45.     Plaintiff and the Class have no authority to refuse or negotiate Defendants' rules and policies; they must comply or risk discipline and/or termination.

**BeavEx Actually Controls The Work Performed By Plaintiff And The Class**

46.     In addition to reserving the right to control the work performed by its drivers, BeavEx, in fact, does exercise control over the method and manner in which Plaintiff and the Class perform their labor and services for BeavEx. There is nothing "independent" about the actual job requirements imposed on Plaintiff and the Class.

47.     BeavEx instructs its drivers concerning how to do their work and dictates the details of the performance of their jobs. For example:

> a. Plaintiff and the Class are required to wear BeavEx uniforms at all times and to post a BeavEx sign on or in their vehicle;
>
> b. Plaintiff and the Class have no authority to refuse pick-ups or deliveries;
>
> c. Plaintiff and the Class must arrive at pick-up and drop-off locations at precise times;
>
> d. Plaintiff and the Class are not permitted to make deliveries or pick-ups according to their own schedules;

16

e. Plaintiff and the Class are not permitted to vary the schedules set by BeavEx;

f. Plaintiff and the Class must provide daily reports of deliveries made;

g. BeavEx employs dispatchers to coordinate and issue the paperwork, delivery and pick-up schedules for Plaintiff and the Class. Plaintiff and the Class are required to strictly adhere to these schedules;

h. Plaintiff and the Class must check in with the BeavEx dispatcher before and after every run, and must report electronically to BeavEx throughout the day;

i. BeavEx's dispatcher acts as the supervisor for Plaintiff and the Class;

j. BeavEx, not Plaintiff or the Class, conducts all of the billing and invoicing to BeavEx's customers for the drivers' work. BeavEx bills the third-party customers directly, and Plaintiff and the Class have no control over whom to deliver packages to, what prices to charge, or what times to make such deliveries. All negotiations over the cost of the delivery are done directly between BeavEx and

17

the third-party customer;

k. If Plaintiff and the Class are not able to drive a route during a particular day, they must find a replacement or substitute who is strictly approved by BeavEx;

l. All drivers for BeavEx must complete a qualification process with BeavEx, which includes a detailed background check and drug screen. BeavEx requires that all persons in contact with any of its customers, including any replacement driver, must go through the same qualification process;

m. If Plaintiff and the Class fail to qualify any substitute drivers, BeavEx reserves the right to terminate them;

n. BeavEx requires Plaintiff and the Class, at their sole cost and expense, to maintain their vehicles in accordance with BeavEx's standards and to submit to BeavEx proof of timely maintenance and inspection of such vehicles; and

o. BeavEx makes unannounced "audits" and inspections upon Plaintiff and the Class to ensure constant and uniform compliance with its policies, directions, rules and procedures. Failure to comply with an audit or inspection can result in termination.

18

48.     BeavEx has, through the guise of the BeavEx Agreement, shifted certain capital costs to Plaintiff and the Class while retaining total behavioral and financial control over them in the same way it would over any of its employees.

49.     The behavioral and financial control manifested by Defendants over Plaintiff and the Class further demonstrates that the workers are employees rather than independent contractors.

50.     Therefore, Plaintiff and the Class are employees and not independent contractors: a) under the federal IRS Test for determining employee status; b) under the federal FLSA economic reality test; c) under the law of the State of Georgia; and d) under the law of the Restatement of Agency (Second) § 220(2).

**Defendants' Financial Incentives To Misclassify Plaintiff And The Class**

51.     Defendants have intentionally misclassified Plaintiff and the Class to avoid BeavEx's obligations under state and federal tax laws, social security, state unemployment insurance laws, workers' compensation laws, and other employment laws.

52.     BeavEx also saves hundreds of thousands of dollars, if not millions of dollars, in avoiding expenses associated with its core business by deducting these amounts from the pay checks of Plaintiff and the Class.  BeavEx has determined that it can shift expenses that it would ordinarily have to pay to its employees.

19

53.    For example, BeavEx deducts various charges and fees from the pay checks of Plaintiff and the Class, including, without limitation:

        a.    HNO fees (the cost of insurance which is required by BeavEx of Plaintiff and the Class and provided automatically by CMS);

        b.    CMS fees;

        c.    Handheld data and other equipment fees; and

        d.    Cargo fees.

54.    The sums deducted by BeavEx (or at the control of BeavEx) from the pay checks of Plaintiff and the Class are not for the benefit of Plaintiff and the Class, but rather, are for the benefit of Defendants and BeavEx's business.

55.    Although Plaintiff and the Class frequently are required, permitted or encouraged to work more than 40 hours per week, they do not receive one and one-half times their regular rate for hours worked in excess of 40 hours per week, as required by the FLSA.

56.    BeavEx denies that Plaintiff and the Class are eligible for unemployment payments when they lose their jobs.

57.    Also, because of the misclassification, Plaintiff and the Class are not covered by workers' compensation when they are injured on the job.

58.    Plaintiff and the Class must pay substantial sums of their own money for work-related expenses, including, without limitation, the purchase or lease of

vehicles and all costs for operating, insuring and maintaining those vehicles, equipment required by BeavEx, and communication devices and company uniforms required by BeavEx.

59. Defendants' denial of legal wages, overtime compensation, reimbursement of work expenses, and other benefits of employment to Plaintiff and the Class, as set forth herein, is and has been, willful and deliberate.

## RICO Allegations

60. Mark Tuchmann is the Founder and CEO of Defendant BeavEx, and holds a legal or beneficial interest in its property.

61. In concert with others, Mr. Tuchmann has authority to, and does, make decisions that concern the policies BeavEx adopts and the implementation of those policies.

62. In concert with others, Mr. Tuchmann has the authority to, and does, make decisions that concern BeavEx's operations, including the intentional misclassification of Plaintiff and the Class as independent contractors, and the implementation of that illegal scheme.

63. Due in part to his role as Founder and CEO, Mr. Tuchmann is actively involved in the creation of the illegal policies and practices complained of in this case.

21

64.     Due in part to his role as Founder and CEO, Mr. Tuchmann actively advises BeavEx's agents on the enforcement of the illegal policies complained of in this case.

65.     Due in part to his role as Founder and CEO, Mr. Tuchmann actively ensures BeavEx's compliance or non-compliance with federal and state law, including the FLSA.

66.     Because Mr. Tuchmann is actively involved in the creation of the illegal policies complained of in this case, actively advises BeavEx's agents on the enforcement of the illegal policies complained of in this case, and actively ensures BeavEx's compliance or non-compliance with state and federal laws, including the FLSA, he actively participated in the violations complained of in this action.

67.     As used in this Complaint, "mailed" means: (1) placing in any post office or authorized depository for mailed matter, and matter or thing to be delivered by the United States Postal Service; (2) causing to be deposited any matter or thing to be delivered by any private or commercial interstate carrier; (3) taking or receiving therefrom any such matter or thing; and/or (4) knowingly causing to be delivered by any such means any such matter.

68.     In order to perpetuate a criminal mail and wire fraud scheme, Defendants knowingly and willfully committed the following predicate offenses

22

under Section 1961(1)(B) of RICO, 18 U.S.C. § 1961(1)(B), constituting "racketeering activity": a) wire fraud in violation of 18 U.S.C. § 1343; and b) mail fraud in violation of 18 U.S.C. § 1341.

69.     Based on information and belief, DOES I-X are individuals employed by BeavEx and/or CMS and/or other entities which have an ownership interest in CMS, who actively advised Defendant BeavEx on the enforcement of the illegal policies complained of in this case.

70.     Based on information and belief, DOES I-X, in concert with others, have authority to, and do make decisions that concern BeavEx and/or CMS's operations, including the illegal classification of Plaintiff and the Class as independent contractors, and the implementation of that scheme.

71.     Defendants Mr. Tuchmann, BeavEx and DOES I-X, in conjunction with and in conspiracy with CMS, devised, intended to devise, and carried out a scheme to cheat Plaintiff and the Class out of their property and to convert their property, including their wages and/or overtime pay and/or business expenses and/or other employment benefits (the "Scheme"). Defendants' Scheme consisted of conspiring to and actually misclassifying BeavEx's drivers as independent contractors, and illegally, willfully and systematically withholding or refusing to pay Plaintiff and the Class their wages and/or overtime pay and/or business

23

expenses and/or other employment benefits, in violation of federal and state laws. Defendants' Scheme was also intended to deprive federal and state departments and agencies of tax revenue, and to inflate Defendants' profits resulting from the fraudulent Scheme.

72.　Defendants' Scheme involved the employment of material misrepresentations and/or omissions as set forth in the illegal Contracts that were presented to Plaintiff and the Class, and other deceptive practices reasonably calculated to deceive Plaintiff and the Class.　Defendants' Scheme involved depriving Plaintiff and the Class of their lawful entitlement to wages and/or overtime pay and/or business expenses and/or other employment benefits, by illegally classifying Plaintiff and the Class as independent contractors.

73.　In executing or attempting to execute the Scheme and to receive the financial benefits of the Scheme, Defendants repeatedly mailed or caused to be mailed pay checks (called "settlement checks" by Defendants) either directly to Plaintiff and the Class and/or between BeavEx's business location and CMS. Defendants also repeatedly mailed or wired the funds underlying the pay checks to Plaintiff and the Class and/or between BeavEx's business location and CMS. These mailings and/or wire transfers of funds occurred on a regular basis and more than 100 such mailings and transfers of funds occurred in the last 10 years.

24

74.     The pay checks were false and deceptive because they misled Plaintiff and the Class about their status and rights under various federal and state laws as set forth herein, including the FLSA.   Plaintiff and the Class relied to their detriment on the misleading checks that Defendants mailed or wired, and those misleading documents were a proximate cause of Plaintiff's and the Class's injuries, as set forth herein.

75.     On information and belief, Defendants also used the U.S. mail to send to various state and federal governmental agencies reports mischaracterizing the status of Plaintiff and the Class, the work performed by these employees, and the payments made to these employees.

76.     On information and belief, Defendants also used the U.S. mail to conduct the daily affairs of the ongoing relationship between the Defendants in furthering their Scheme, and to otherwise conduct the daily affairs of their illegal enterprise.

77.     Defendants' predicate acts of mailing and/or wiring the misleading checks in furtherance of their Scheme constitutes a pattern of conduct unlawful pursuant to 18 U.S.C. § 1961(5) based upon both the relationship between the acts and continuity over the period of time of the acts.  The relationship was reflected because the acts were connected to each other in furtherance of the Scheme.

Continuity was reflected by both the repeated nature of the mailings and transfers of funds during and in furtherance of the Scheme and the threat of similar acts occurring in the future. The threat was reflected by the continuing and ongoing nature of the acts.

78.     Defendants' predicate acts were related, because they reflected the same purpose or goal (to retain wages and/or overtime pay and/or business expenses and/or other employment benefits due to Plaintiff and the Class for the economic benefit of Defendants and members of the enterprise); results (retention of wages and/or overtime pay and/or business expenses and/or other employment benefits); participants (Defendants and other members of the enterprise); victims (Plaintiff and the Class); and methods of commission (the Scheme and other acts described in the Complaint). The acts were interrelated and not isolated events, since they were carried out for the same purposes in a continuous manner over a substantial period of time.

79.     At all relevant times, in connection with the Scheme, Defendants acted with malice, intent, knowledge, and in reckless disregard of the rights of Plaintiff and the Class.

80.     Plaintiff and the Class members are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964.

26

81.     Each Defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

82.     Defendants were members of an "enterprise" under 18 U.S.C. §§ 1961(4) and 1962(a), which was engaged in or the activities of which affected interstate and foreign commerce.

83.     Each Defendant received income from a pattern of conduct unlawful under RICO, in which Defendants participated through continuous instances of providing Plaintiff and the Class with misleading documents, which Defendants mailed or wired and upon which Plaintiff and the Class relied to their detriment.

84.     Plaintiff and the Class were injured in their business and property under 18 U.S.C. § 1964(c) by reason of Defendants' commission of conduct, which was unlawful under RICO.

85.     Every check that Defendants mailed or wired or caused to have mailed or wired to Plaintiff and the Class as part of the Scheme constituted a new legal injury to Plaintiff and the Class.

86.     Therefore, each and every improper payment within the relevant statute of limitations period constitutes a new legal injury and Plaintiff and the Class are entitled to recover based on the reduction in each improper payment.

27

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

87.    This action is maintainable as an opt-in collective action pursuant to 29 U.S.C. § 216(b) as to Plaintiff's claims for unpaid wages, overtime compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

88.    In addition to Plaintiff, numerous current and former drivers for BeavEx are similarly situated to Plaintiff, and Plaintiff is acting on behalf of their interests as well as Plaintiff's own interests in bringing this action. Plaintiff believes that BeavEx has employed thousands of current and former drivers during the relevant time period.

89.    Plaintiff and the Class are similarly situated, as they have substantially similar job requirements and provisions and are subject to a common policy, practice or plan by Defendants that requires or permits them to perform work for BeavEx which is not compensated under the FLSA.

90.    Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex employment class action and collective action litigation.

91.    The personal vehicles that Plaintiff and the Class use to make BeavEx deliveries do not exceed 10,000 pounds.

28

92.    Defendants willfully violated the FLSA.  Defendants knew or should have known that their conduct was unlawful and/or showed reckless disregard for the rights of Plaintiff and the Class under the FLSA.

93.    Despite their knowledge that time spent by Plaintiff and the Class, as described above, was compensable time under the FLSA, Defendants have refused to fully compensate BeavEx's drivers for any of this time.

94.    The identity of the Class members is known to Defendants and is readily identifiable through BeavEx's records.  Similarly situated employees may readily be notified of this action, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims under the FLSA.

## CLASS ACTION ALLEGATIONS

95.    Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the following class:

> all persons who have entered an Independent Contractor Services Agreement with BeavEx and who drove or who currently drive a vehicle on a full-time basis (meaning exclusive of time off for commonly excused employment absences) at any time during the relevant statutory period applicable to each of Plaintiff's causes of action (the "Class").

96.    The members of the Class are so numerous that joinder of all members of the Class is impracticable.  Plaintiff believes that the Class numbers in the thousands.

97.     Common questions of law and fact predominate in this action because the claims of all Class Members are based on BeavEx's uniform policies and practices of misclassifying its drivers as independent contractors, which emanate out of the Company's corporate headquarters in Georgia.  Common questions include, without limitation:

a.     Whether Plaintiff and the Class have been misclassified as independent contractors by Defendants;

b.     Whether, through the BeavEx Agreement, Defendants retained the right to control the work performed by Plaintiff and the Class;

c.     Whether, through its uniform policies and practices, Defendants retained the right to control the work performed by Plaintiff and the Class;

d.     Whether, through its uniform policies and practices, Defendants exercised actual control over the time, manner and method of the work performed by Plaintiff and the Class;

e.     Whether Defendants, through BeavEx's policy or practice of misclassifying Class members as independent contractors, fail to provide Plaintiff and the Class with all benefits required by ERISA;

f.     Whether Defendants BeavEx, Mark Tuchmann and DOES I-X engaged in a pattern of racketeering activity in violation of RICO;

30

g.    The nature and extent of class-wide injury and the measure of damages therefore; and

h.    The proper formula for calculating restitution, damages and penalties owed to Plaintiff and the Class.

98.    Plaintiff's claims are typical of the claims of the Class in the following ways:  a) Plaintiff is a member of the Class; b) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Class; c) Plaintiff's claims are based on the same legal and remedial theories as those of the Class and involve similar factual circumstances; d) there are no conflicts between the interests of Plaintiff and the Class members; and e) the injuries suffered by Plaintiff are similar to the injuries suffered by the Class.

99.    Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff's counsel is competent and experienced in litigating class actions and other complex litigation matters.

100.    Plaintiff's class claims for monetary damages are brought pursuant to Fed. R. Civ. P. 23(b)(1) and/or (b)(3).  Plaintiff's class claims for injunctive, declaratory and/or other equitable relief are brought pursuant to Fed. R. Civ. P. 23(b)(1) and/or (b)(2).

31

101.   Class certification of Plaintiff's claims is appropriate because the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendants, and/or because adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of non-party Class members.

102.   Class certification of Plaintiff's claims for injunctive, declaratory and/or other equitable relief is appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to the Class as a whole.   The members of the Class are entitled to injunctive relief to end BeavEx's common and uniform practice of denying the Class the wages and other damages to which they are entitled.

103.   Class certification of Plaintiff's claims is also appropriate because questions of law and fact common to the Class predominate over questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

32

and without the duplication of effort and expense that numerous individual actions would entail. Furthermore, from a practical standpoint, the amounts at stake for many of the Class members are not great enough to enable them to maintain separate suits against Defendants.

104. The Class is readily identifiable from BeavEx's own records.

105. Without a class action, Defendants will retain the benefit of their wrongdoing and will continue an illegal course of action, which will result in further damage to Plaintiff and the Class. Plaintiff envisions no difficulty in the management of this action as a class action, and actions similar to this case have been certified as class actions by other federal courts.

## COUNT I
### Declaratory Judgment
### Against All Defendants

106. Plaintiff incorporates by reference all preceding paragraphs.

107. An actual controversy has arisen between Plaintiff and Defendants relating to whether BeavEx has illegally misclassified Plaintiff and the Class as independent contractors instead of employees, and have thus denied Plaintiff and the Class the common benefits of employee status, including, without limitation, overtime compensation and contributions to BeavEx's retirement plan.

33

108.   Plaintiff and the Class seek entry of a declaratory judgment in their favor which declares that BeavEx's practices as alleged herein are unlawful; that Plaintiff and the Class are employees and not independent contractors; and which provides for recovery of all sums determined by this Court to be owed to Plaintiff and the Class by Defendants.

## COUNT II
### Rescission of Contract
### Against Defendant BeavEx

109.   Plaintiff incorporates by reference all preceding paragraphs.

110.   The written contracts between BeavEx and Plaintiff and the Class are unconscionable and illegal contracts of adhesion, and should be held unenforceable in part or in whole under Georgia state law, as contrary to the public interest, policy and law.

111.   The BeavEx Agreement unfairly advantages BeavEx by illegally mischaracterizing the status of Plaintiff and the Class, in that BeavEx attempts to illegally evade its employment related obligations through the contract.

112.   The BeavEx Agreement is void as against public policy as its sole purpose is to violate federal and state law, and it is therefore unenforceable.

113.   For these reasons, Plaintiff and the Class are entitled to rescission of the BeavEx Agreement pursuant to Georgia law and restitution of the reasonable value of services rendered to BeavEx by Plaintiff and the Class.

## COUNT III
### Misclassification as Independent Contractors
### Against Defendant BeavEx

114.   Plaintiff incorporates by reference all preceding paragraphs.

115.   Defendant BeavEx has knowingly and willfully misclassified Plaintiff and the Class as independent contractors instead of employees, in violation of Georgia law (based on the BeavEx Agreement's choice of law provision and where BeavEx is headquartered).

## COUNT IV
### Fair Labor Standards Act
### Against All Defendants

116.   Plaintiff incorporates by reference all preceding paragraphs.

117.   Defendants violated the FLSA by knowingly failing to maintain records of all hours worked by BeavEx's drivers, including Plaintiff and the Class.

118.   Defendants violated the FLSA by knowingly failing to compensate Plaintiff and the Class at a rate of one and one-half times their regular hourly wage for hours worked in excess of 40 hours per week in violation of 29 U.S.C. § 207(a)(1).

119. Defendants violated the FLSA by knowingly failing to compensate Plaintiff and the Class the federally mandated minimum wage in violation of 29 U.S.C. § 206 for all hours worked.

120. Defendants' actions were willful.

121. Defendants are therefore liable to Plaintiff and the Class under 29 U.S.C. § 216(b) of the FLSA, for their unpaid wages and unpaid overtime compensation, plus an additional equal amount as liquidated damages, court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

## COUNT V
### Quantum Meruit
### Against Defendant BeavEx

122. Plaintiff incorporates by reference all preceding paragraphs.

123. Plaintiff and the Class have been deprived by BeavEx of the fair value of their services and the reimbursement of their work-related expenses and are thus entitled to recovery in quantum meruit pursuant to Georgia law.

## COUNT VI
### Unjust Enrichment
### Against All Defendants

124. Plaintiff incorporates by reference all preceding paragraphs.

36

125.   Defendants received and benefitted from the uncompensated labors of Plaintiff and the Class and the costs advances by Plaintiff and the Class on BeavEx's behalf, and for Defendants to retain these benefits without compensation and reimbursement would be inequitable and would rise to the level of unjust enrichment.

126.   Plaintiffs and the Class have a reasonable expectation that they will be paid all amounts to which they are entitled by federal and state law.

127.   Defendants carefully track all compensation paid to Plaintiff and the Class as a measure of profit calculation.  Deductions and underpayment of wages and other benefits of employment to Plaintiff and the Class directly increase BeavEx's profit.

128.   At all relevant times hereto, Defendants carefully devised and implemented an illegal plan to increase BeavEx's earnings and profits by fostering an illegal scheme of securing uncompensated work from Plaintiff and the Class.

129.   Contrary to all good faith and fair dealing, Defendants instructed and encouraged its managers and supervisors to induce Plaintiff and the Class to perform the work and deduct the fees alleged in this Complaint, for which just compensation and benefits required by law have not been paid.

130. By underpaying Plaintiff and the Class, Defendants have been unjustly enriched. Defendant BeavEx has enjoyed reduced overhead and has therefore realized additional earnings and profits for Defendants' benefit and to the detriment of Plaintiff and the Class.

131. Defendants have retained and continue to retain such benefits contrary to the fundamental principles of justice, equity, and good conscience.

132. Defendants' wrongful conduct is so offensive to common values as to merit redress by way of exemplary or punitive or other damages for Plaintiff and the Class, from Defendants, in an amount to be determined.

133. Accordingly, Plaintiff and the Class are entitled to judgment in an amount equal to the benefits unjustly retained by Defendants pursuant to Georgia law, to be proved at trial.

## COUNT VII
### ERISA Violations Against Defendant BeavEx

134. Plaintiff incorporates by reference all preceding paragraphs.

135. Under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), Plaintiff and the Class are entitled to clarify and enforce their rights pertaining to any and all benefits which may have been owed under any such Plans.

136.   Plaintiff has either attempted to exhaust administrative remedies but was prevented by Defendant BeavEx from exhausting such remedies, or exhaustion would be futile because Defendant BeavEx has classified Plaintiff and the Class as independent contractors rather than employees.

137.   By wrongfully classifying Plaintiff and the Class as ineligible under any ERISA Plans, Defendant BeavEx has violated, and continues to violate, the terms of the Plans and Plaintiff's rights thereunder.

138.   Plaintiff and the Class are correctly classified as employees and have the right to payment of benefits pursuant to benefit plans that BeavEx had in effect during the relevant time period.  Accordingly, under 29 U.S.C. § 1132(a)(1)(B), Plaintiff and the Class are entitled to declaratory relief as to pension, health, disability, group insurance, dependent care, and/or other benefits that were not paid as a result of their improper and illegal misclassification.

## COUNT VIII
### RICO Violations, Pursuant to 18 U.S. C. § 1962(c)
### Against All Defendants

139.   Plaintiff incorporates by reference all preceding paragraphs.

140.   BeavEx is an enterprise engaged in and whose activities affect interstate commerce.  Defendant Mark Tuchmann is employed by or associated with the enterprise.

141.   Third party CMS is an enterprise engaged in and whose activities affect interstate commerce.   Defendants BeavEx, Mark Tuchmann and DOES I-X are associated with the enterprise.

142.   Defendants BeavEx, Mark Tuchmann and DOES I-X agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff and the Class.   Specifically, Defendants BeavEx, Mark Tuchmann, and DOES I-X participated in a scheme to further their policy or practice of illegally misclassifying BeavEx's drivers as independent contractors.

143.   Defendant BeavEx is also vicariously responsible for the wrongful acts of Mark Tuchmann, because Mark Tuchmann's activities were related to and committed within the course of his employment; committed in furtherance of the business of BeavEx; and were authorized or subsequently acquiesced to by BeavEx.

144.   Pursuant to and in furtherance of their fraudulent Scheme, Defendants committed multiple related acts of mail and/or wire fraud and knowing violations of state and federal wage and hour and employment laws.

145.   The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S. C. § 1962(c).

146.   As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff and the Class have been injured in their business and property in that Plaintiff and the Class have been denied wages and/or overtime pay and/or business expenses and/or other employment benefits.

147.   Defendants are therefore liable to Plaintiff and Class under RICO for their actual damages, treble damages, attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

**COUNT IX**
**RICO Conspiracy Violations, Pursuant to 18 U.S. C. § 1962(d)**
**Against All Defendants**

148.   Plaintiff incorporates by reference all preceding paragraphs.

149.   As set forth above, Defendants agreed and conspired to violate 18 U.S.C. § 1962(c).  Specifically, Defendants Mark Tuchmann, BeavEx and DOES I-X have conducted and participated in the conduct of the affairs of the enterprise, in order to unlawfully misclassify BeavEx drivers as independent contractors through a pattern of racketeering activity.

150.   Defendants have intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.  Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to

41

further the schemes described above.   That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

151.   As a direct and proximate result of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff and the Class have been injured in their business and property in that:  Plaintiff and the Class have been denied the rights and benefits that accrue to employees under state and federal law, including wages and/or overtime pay and/or business expenses and/or other employment benefits.

152.   Defendants are therefore liable to Plaintiff and Class under RICO for their actual damages, treble damages, attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment entering the following relief:

> a) An order certifying all counts alleged in this Complaint as a class action pursuant to Fed. R. Civ. P. 23;
>
> b) An order permitting this action to proceed as a collective action under 29 U.S.C. § 216(b);
>
> c) A declaration that Defendants misclassified Plaintiff and the Class as independent contractors instead of employees;
>
> d) Injunctive relief requiring Defendants to comply with all applicable federal and state laws and cease their illegal practices;
>
> e) Damages attributable to Defendants' statutory and common law

violations as alleged herein, and statutory enhancements of damages as allowed by law;

f) An award of actual damages, treble damages and attorneys' fees and costs pursuant to RICO;

g) A judgment in favor of Plaintiff and the Class for all penalties and liquidated damages allowed by law;

h) An award of prejudgment and post-judgment interest to Plaintiff and the Class;

i) An order rescinding the BeavEx Agreement and awarding restitution to Plaintiff and the Class for the reasonable value of their services provided to BeavEx;

j) An award of attorney's fees and costs as provided by law; and

k) Any other relief as this Court may deem proper and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all claims so triable.

Date: November 12, 2009        Respectfully submitted,

Martin D. Chitwood, Georgia Bar No. 124950
Craig G. Harley, Georgia Bar No. 326813
CHITWOOD HARLEY HARNES LLP
1230 Peachtree Street NE
2300 Promenade II
Atlanta, Georgia 30309
Tel: (404) 873-3900
mchitwood@chitwoodlaw.com
charley@chitwoodlaw.com

43

Sherrie R. Savett
Shanon J. Carson
Sarah R. Schalman-Bergen
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103
Tel: (215) 875-4656
Fax: (215) 875-4604
ssavett@bm.net
scarson@bm.net
sschalman-bergen@bm.net

Michael O'Hayer
MICHAEL O'HAYER LAW OFFICES
22 N. Walnut Street
West Chester, Pennsylvania 19380
Tel: (610) 738-1230
mkohaher@aol.com

*Attorneys for Plaintiff and the Class*